# HOOPER ET AL. v. BERNALILLO COUNTY ASSESSOR

No. 84–231.   Argued February 20, 1985—Decided June 24, 1985

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, and BLACKMUN, JJ., joined. BRENNAN, J., filed a concurring opinion, *post*, p. 624. STEVENS, J., filed a dissenting opinion, in which REHNQUIST and O'CONNOR, JJ., joined, *post*, p. 624. POWELL, J., took no part in the decision of the case.

*Alvin D. Hooper, pro se,* argued the cause for appellants. With him on the briefs was *Harold L. Folley.*

*H. Bartow Farr III* argued the cause for appellee. With him on the brief was *Kenneth Hunt.**

---

**David Greer* filed a brief for the American Legion et al. as *amici curiae* urging affirmance.

*Paul Bardacke,* Attorney General, and *Bridget A. Jacober,* Special Assistant Attorney General, filed a brief for the State of New Mexico as *amicus curiae.*

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We noted probable jurisdiction to decide whether a New Mexico statute that grants a tax exemption limited to those Vietnam veterans who resided in the State before May 8, 1976, violates the Equal Protection Clause of the Fourteenth Amendment.

I

Pursuant to Art. VIII, § 5, of the New Mexico Constitution, the New Mexico State Legislature has granted annual property tax exemptions to residents who served in the Armed Forces. As applied to Vietnam veterans currently residing in New Mexico, § 7–37–5 of the New Mexico Statutes[1] exempts $2,000 of the taxable value of property for any honorably discharged Vietnam veteran who served on active duty during the Vietnam War for at least 90 continuous days, N. M. Stat. Ann. §§ 7–37–5(C)(1) and (2) (1983), and who was a New Mexico resident before May 8, 1976, § 7–37–5(C)(3)(d).[2]

---

[1] Section 7–37–5 also provides the $2,000 property tax exemption, under substantially similar conditions, to certain resident veterans of World War I, World War II, and the Korean War. The one variable is the eligibility date: World War I veterans must have been residents of New Mexico before January 1, 1934; World War II veterans must have been residents before January 1, 1947; and Korean War veterans must have been residents before February 1, 1955. N. M. Stat. Ann. §§ 7–37–5(C)(3)(a), (b), and (c) (1983).

[2] The initial statute extending an exemption to Vietnam veterans required that the veteran have been a New Mexico resident before "entering the armed services from New Mexico" and also that the veteran have been "awarded a Vietnam campaign medal for services in Vietnam" during a prescribed period. 1973 N. M. Laws, Ch. 258, p. 1052. In 1975, the state legislature eliminated the medal requirement but retained the condition that the veteran have entered the Armed Forces from the State. 1975 N. M. Laws, Ch. 3, p. 11.

In 1981, the legislature dropped the requirement that the veteran have entered the military from New Mexico. The new statute extended the tax exemption to any Vietnam veteran who "was a New Mexico resident prior

Appellants, Alvin D. Hooper and his wife Mary, established residence in New Mexico on August 17, 1981. During the Vietnam War, Alvin Hooper had served for over 90 continuous days as a member of the United States Army; Hooper was honorably discharged in September 1965. For the 1983 tax year, the Hoopers applied for the $2,000 veterans' tax exemption with respect to their jointly held real property in Bernalillo County. Appellee, the Bernalillo County Assessor, denied the claim because Hooper had not been a state resident before May 8, 1975.

Appellants challenged § 7–37–5(C)(3)(d) as violative of their right to equal protection of the law and their constitutional right to migrate to New Mexico. After a hearing, the Bernalillo County Valuation Board rejected appellants' constitutional challenge and upheld the Assessor's denial of the tax exemption.[3]

The New Mexico Court of Appeals affirmed. 101 N. M. 172, 679 P. 2d 840, cert. denied, 101 N. M. 77, 678 P. 2d 705 (1984). The court, noting that the statute did not affect "such fundamental interests as voting, welfare benefits, or public medical assistance," concluded that the statute did not unconstitutionally burden an exercise of the right to travel. *Id.*, at 175, 679 P. 2d, at 843. The court held that the statute

---

to . . . May 8, 1975." 1981 N. M. Laws, Ch. 187, p. 1078. In 1983, the statute was amended to provide the exemption to any Vietnam veteran "who was a New Mexico resident prior to . . . May 8, 1976." 1983 N. M. Laws, Ch. 330, p. 2112.

[3] The state legislature changed the eligibility date to May 8, 1976, after appellants had commenced administrative proceedings to challenge the denial of the exemption. The Board's decision relied on the amended 1976 date. Before the New Mexico Court of Appeals, appellee conceded that this date was inapplicable to the 1983 tax year because the legislature intended that it apply starting with the 1984 tax year. Accordingly, appellants' claimed exemption should have been denied on the basis of the 1975 eligibility date. Presumably because this discrepancy had no bearing on the constitutional issue, the Court of Appeals did not mention this point. For the sake of clarity, we analyze the statute using the 1976 eligibility date.

was consistent with the Equal Protection Clause because it "reflects legitimate state purposes" and "bears a reasonable relationship to those purposes." *Ibid.* The court reasoned that "[a] state's interest in expressing gratitude and rewarding its own citizens for honorable military service is a rational basis for veterans' preferences," and that the state legislature is "entitled to limit the period of time within which [veterans] may choose to establish residency." *Id.*, at 176, 679 P. 2d at 844.

We noted probable jurisdiction. 469 U. S. 878 (1984). We reverse.

## II

The New Mexico veterans' tax exemption differs from the durational residence requirements the Court examined in *Sosna* v. *Iowa*, 419 U. S. 393 (1975); *Memorial Hospital* v. *Maricopa County*, 415 U. S. 250 (1974); *Dunn* v. *Blumstein*, 405 U. S. 330 (1972); and *Shapiro* v. *Thompson*, 394 U. S. 618 (1969). The statutes at issue in those cases conditioned eligibility for certain benefits, otherwise available on an equal basis to all residents, on a new resident's living in the State for a fixed minimum period.[4] The durational residence requirements purported to assure that only persons who had established bona fide residence received the benefits provided residents of the States.

The New Mexico statute does not impose any threshold waiting period on those resident veterans seeking the tax exemption; resident veterans are entitled to the exemption provided they satisfy the statute's other criteria. Nor does the statute purport to establish a test of the bona fides of state residence. Instead, the tax exemption contains a fixed-date residence requirement. The statute thus divides

---

[4] In the durational residence cases, the Court reviewed state laws which established waiting periods on access to divorce courts, *Sosna* v. *Iowa;* eligibility for free nonemergency medical care, *Memorial Hospital* v. *Maricopa County;* qualification for voting rights, *Dunn* v. *Blumstein;* and receipt of welfare assistance, *Shapiro* v. *Thompson.*

resident Vietnam veterans into two groups: resident veterans who resided in the State before May 8, 1976, qualify for the exemption;[5] resident veterans who established residence after that date do not. Like the Alaska dividend distribution law examined in *Zobel* v. *Williams*, 457 U. S. 55 (1982), the tax exemption statute thus creates "fixed, permanent distinctions between . . . classes of concededly bona fide residents" based on when they arrived in the State. *Id.*, at 59.

Appellants established residence in New Mexico several months after the 1981 amendment set the eligibility date as May 8, 1975. Appellants have no quarrel with the legislature's changing the eligibility date after veterans have chosen to reside in New Mexico, for the enactment date is irrelevant to qualification for the tax exemption. Appellants instead challenge the distinction made by the State within the class of Vietnam veterans who currently are bona fide residents. Their challenge is that the exemption is accorded to those resident Vietnam veterans who resided in the State sometime before May 8, 1976, but not to those Vietnam veterans who have arrived since then.

---

[5] This eligibility date has a curious background, which is not explained simply as "one year [after] the final U. S. troop withdrawal [from Vietnam]." 101 N. M. 172, 176, 679 P. 2d 840, 844, cert. denied, 101 N. M. 77, 678 P. 2d 705 (1984). On January 27, 1973, the United States and other participants in the conflict signed the Vietnam cease-fire agreement in Paris, France. Agreement on Ending the War and Restoring Peace in Viet-Nam, Jan. 27, 1973, [1973] 24 U. S. T. 1, T. I. A. S. No. 7542. The last American troops were withdrawn from Vietnam on March 29, 1973.

By Proclamation, President Ford designated May 7, 1975, as the last day of the "Vietnam era." Proclamation No. 4373, 3A CFR 48 (1976). The Federal Government uses this date to determine eligibility for veterans' benefits for those persons who served in the Armed Forces during the Vietnam War. See 38 U. S. C. § 101(29), which defines the "Vietnam era" as that period beginning August 5, 1964, and ending May 7, 1975. In 1981, the New Mexico State Legislature adopted this date to determine eligibility for the Vietnam veterans' tax exemption. In 1983, the state legislature changed the date to May 8, 1976, presumably to extend a "grace period" to veterans choosing to reside in New Mexico. See n. 2, *supra.*

When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment.[6] Generally, a law will survive that scrutiny if the distinction rationally furthers a legitimate state purpose. Appellants claim that the distinction made by the New Mexico statute should be subjected to the higher level of scrutiny applied to the durational residence requirements in *Memorial Hospital* v. *Maricopa County, supra,* and *Shapiro* v. *Thompson, supra.* Alternatively, appellants claim that the statute cannot withstand the minimum rationality inquiry applied to the Alaska dividend distribution law in *Zobel* v. *Williams, supra.* Appellee, on the other hand, asserts that the statute need only satisfy the latter standard of review. As in *Zobel,* if the statutory scheme cannot pass even the minimum rationality test, our inquiry ends.

### III

The New Mexico Court of Appeals accepted two justifications for the distinction made by the Vietnam veterans' tax exemption statute: the exemption encourages veterans to settle in the State and it serves as an expression of the

---

[6] The New Mexico Court of Appeals considered whether the veterans' tax exemption law violated appellants' constitutional right to travel. Despite disagreement over its source in the Constitution, compare *Zobel* v. *Williams,* 457 U. S. 55, 65 (1982) (BRENNAN, J., concurring), with *id.,* at 71 (O'CONNOR, J., concurring in judgment), the Court has long held that the right to travel, "when applied to residency requirements, protects new residents of a State from being disadvantaged because of their recent migration or from otherwise being treated differently from longer term residents." *Id.,* at 60, n. 6; see, *e. g., Memorial Hospital* v. *Maricopa County,* 415 U. S. 250, 261 (1974); *Shapiro* v. *Thompson,* 394 U. S. 618, 629–631 (1969).

As we noted in *Zobel,* "[r]ight to travel cases have examined, in equal protection terms, state distinctions between newcomers and longer term residents." 457 U. S., at 60, n. 6. This case involves a distinction between residents based on when they first established residence in the State. Following *Zobel,* we subject this case to equal protection analysis.

State's appreciation to its "own citizens for honorable military service." 101 N. M., at 176, 679 P. 2d, at 844. Before this Court, the latter purpose has been refined as assisting "veterans who, as [New Mexico] citizens, were dependent on [the State] during a time of upheaval in their lives." Brief for Appellee 22. This rationale assumes that the State accepted a special responsibility toward those veterans who "picked up or laid down the burdens of war" as state residents.[7]

## A

The distinction New Mexico makes between veterans who established residence before May 8, 1976, and those veterans who arrived in the State thereafter bears no rational relationship to one of the State's objectives—encouraging Vietnam veterans to move to New Mexico. The legislature set this eligibility date long after the triggering event occurred. See n. 2, *supra*. The legislature cannot plausibly encourage veterans to move to the State by passing such retroactive legislation.[8] It is possible that some Vietnam veterans, at least since 1981, might have been discouraged from settling in New Mexico given the State's exclusion of new resident veterans from a benefit available only to those veterans who resided in the State before May 8, 1976. "The separation of residents into classes hardly seems a likely way to persuade

---

[7] The State of New Mexico, as *amicus curiae*, observes that the statute's purpose "is to reward persons who served in periods of armed conflict as residents of New Mexico or who established residency in New Mexico shortly thereafter." Brief for State of New Mexico as *Amicus Curiae* 5.

[8] Although neither appellee nor the State of New Mexico presses the point, the statute could conceivably influence certain veterans, having already moved to New Mexico, to remain there so as to secure the tax benefit. Similarly, the statute could plausibly encourage certain veterans, who had once resided in New Mexico prior to May 8, 1976, to return to the State. This selective incentive, however, would encounter the same constitutional barrier faced by the statute's distinction between past and newly arrived residents. See *infra*.

new [residents] that the State welcomes them and wants them to stay." *Zobel* v. *Williams,* 457 U. S., at 62, n. 9.[9]

## B

The second purpose of the statute—rewarding veterans who resided in the State before May 8, 1976, for their military service—was primarily relied upon by the New Mexico Court of Appeals to support the statute's distinction between resident veterans. One component of this rationale is, of course, plainly legitimate; only recently we observed that "[o]ur country has a longstanding policy of compensating veterans for their past contributions by providing them with numerous advantages." *Regan* v. *Taxation With Representation of Wash.,* 461 U. S. 540, 551 (1983) (footnote omitted); see *Personnel Administrator of Mass.* v. *Feeney,* 442 U. S. 256, 279, n. 25 (1979). And as Judge Friendly has noted, the various preferences for veterans are grounded in a "[d]esire to compensate in some measure for the disruption of a way of life . . . and to express gratitude . . . ." *Russell* v. *Hodges,* 470 F. 2d 212, 218 (CA2 1972). See *Regan* v. *Taxation With Representation of Wash., supra,* at 551.

Consistent with this policy, the State may award certain benefits to all its bona fide veterans, because it then is making neither an invidious nor irrational distinction among its residents. Resident veterans, as a group, may well deserve preferential treatment,[10] and such differential treatment vis-à-vis non-veterans does not offend the Equal Protection Clause. See, *e. g., Personnel Administrator of Mass.* v. *Feeney, supra;* see also *Johnson* v. *Robison,* 415 U. S. 361 (1974).

---

[9] A state objective to inhibit migration into the State would encounter "insurmountable constitutional difficulties." *Zobel, supra,* at 62, n. 9. See *Shapiro* v. *Thompson, supra,* at 629.

[10] For a compilation of the variety of state veterans' preference statutes, see House Committee on Veterans' Affairs, State Veterans' Laws, 98th Cong., 2d Sess., 1–306 (Comm. Print No. 47, 1984).

The New Mexico statute, however, does not simply distinguish between resident veterans and non-veteran residents; it confers a benefit only on "established" resident veterans, *i. e.*, those who resided in the State before May 8, 1976. Appellee and the State justify this distinction on the basis that those veterans who left their homes in New Mexico to fight in Vietnam, as well as those who settled in the State within the few years after the war ended, deserve to be treated differently from veterans who make New Mexico their home after May 8, 1976. The legislature is said to have decided it owed a special responsibility to these "established" veterans.

Appellee and the State's evaluation of this legislative judgment may be questioned on its own terms. Those who serve in the military during wartime inevitably have their lives disrupted; but it is difficult to grasp how New Mexico residents serving in the military suffered more than residents of other States who served, so that the latter would not deserve the benefits a State bestows for national military service. Moreover, the legislature provided this economic boon years after the dislocation occurred. Established state residents, by this time, presumably had become resettled in the community and the modest tax exemption hardly bears directly on the transition to civilian life long after the war's end. Finally, the benefit of the tax exemption continues for the recipient's life. The annual exemption, which will benefit this limited group of resident veterans long after the wartime disruption dissipated, is a continuing bounty for one group of residents rather than simply an attempt to ease the veteran's return to civilian life.

Even assuming that the State may legitimately grant benefits on the basis of a coincidence between military service and past residence,[11] the New Mexico statute's distinction

---

[11] Veterans' benefit statutes, which condition eligibility on state residence at the time of induction into the military, have survived challenges under the Equal Protection Clause before *Zobel* was decided. See, *e. g.*, *Langston* v. *Levitt*, 425 F. Supp. 642 (SDNY 1977); *August* v. *Bronstein*,

between resident veterans is not rationally related to the State's asserted legislative goal. The statute is not written to require any connection between the veteran's prior residence and military service.[12] Indeed, the veteran who resided in New Mexico as an infant long ago would immediately qualify for the exemption upon settling in the State at any time in the future regardless of where he resided before, during, or after military service.

## C

Stripped of its asserted justifications, the New Mexico statute suffers from the same constitutional flaw as the Alaska statute in *Zobel*.[13] The New Mexico statute, by singling out previous residents for the tax exemption, rewards

369 F. Supp. 190 (SDNY), summarily aff'd, 417 U. S. 901 (1974); *Leech* v. *Veterans' Bonus Division Appeals*, 179 Conn. 311, 426 A. 2d 289 (1979).

The Court's summary affirmance in *August* v. *Bronstein* may not be read as an adoption of the reasoning of the judgment under review. *Zobel* v. *Williams*, 457 U. S., at 64, n. 13; *Fusari* v. *Steinberg*, 419 U. S. 379, 391 (1975) (concurring opinion). Indeed, the Second Circuit recently has ruled that such a statute could not pass muster under the Equal Protection Clause in light of the Court's holding in *Zobel*. *Soto-Lopez* v. *New York City Civil Service Comm'n*, 755 F. 2d 266 (1985), appeal docketed, No. 84–1803. Given the circumstances presented in this case, we need not consider here the constitutionality of these statutes.

[12] Compare the New Mexico open-ended prior-residence requirement with the specific criteria of Ill. Rev. Stat. Ch. 126½, ¶ 57.52 (1983); Ky. Rev. Stat. § 40.005 (1980); and Pa. Stat. Ann., Tit. 51, §§ 20122, 20123 (1976 and Supp. 1984–1985) (Purdon).

We also note that the New Mexico statute differs from the local "bounty" laws enacted during the Civil War era, through which States paid residents cash bonuses for enlisting. See generally E. Murdock, Patriotism Unlimited, 1862–1865, pp. 16–41 (1967).

[13] In *Zobel* v. *Williams*, the Court held that an Alaska statute that used length of state residence to calculate distribution of dividends from the State's oil reserves violated the Equal Protection Clause. We made clear that the statute's only conceivable purpose—"to reward citizens for past contributions"—is "not a legitimate state purpose." 457 U. S., at 63; see *id.*, at 68 (BRENNAN, J., concurring).

only those citizens for their "past contributions" toward our Nation's military effort in Vietnam. *Zobel* teaches that such an objective is "not a legitimate state purpose." 457 U. S., at 63. The State may not favor established residents over new residents based on the view that the State may take care of "its own," if such is defined by prior residence. Newcomers, by establishing bona fide residence in the State, become the State's "own" and may not be discriminated against solely on the basis of their arrival in the State after May 8, 1976. See, *e. g., Vlandis* v. *Kline,* 412 U. S. 441, 449–450, and n. 6 (1973); *Shapiro* v. *Thompson,* 394 U. S., at 632–633; *Passenger Cases,* 7 How. 283, 492 (1849) (Taney, C. J., dissenting).

The New Mexico statute creates two tiers of resident Vietnam veterans, identifying resident veterans who settled in the State after May 8, 1976, as in a sense "second-class citizens." This discrimination on the basis of residence is not supported by any identifiable state interest; the statute is not written to benefit only those residents who suffered dislocation within the State's borders by reason of military service. *Zobel* made clear that the Constitution will not tolerate a state benefit program that "creates fixed, permanent distinctions . . . between . . . classes of concededly bona fide residents, based on how long they have been in the State." 457 U. S., at 59.[14] Neither the Equal Protection Clause, nor this Court's precedents, permit the State to prefer established resident veterans over newcomers in the retroactive apportionment of an economic benefit.

D

We decline appellants' request to rule on the severability of the unconstitutional aspect of the New Mexico veterans' tax

---

[14] Concurring in *Zobel,* JUSTICE BRENNAN noted that the Citizenship Clause of the Fourteenth Amendment "does not provide for, and does not allow for, degrees of citizenship based on length of residence. And the Equal Protection Clause would not tolerate such distinctions." *Id.,* at 69 (footnote omitted).

exemption statute. If the fixed-date residence requirement, § 7–37–5(C)(3)(d), were excised from the statute, the exemption would be available to all current resident veterans who served the requisite 90 days during the Vietnam War and received honorable discharges. It is for the New Mexico courts to decide, as a matter of state law, whether the state legislature would have enacted the statute without the invalid portion. See, *e. g., Zobel* v. *Williams, supra,* at 64–65; *Champlin Refining Co.* v. *Corporation Comm'n of Oklahoma,* 286 U. S. 210, 234 (1932); *State* v. *Spearman,* 84 N. M. 366, 368, 503 P. 2d 649, 651 (App. 1972).

## IV

We hold that the New Mexico veterans' tax exemption statute violates the guarantees of the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the judgment of the New Mexico Court of Appeals is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

JUSTICE POWELL took no part in the decision of the case.

JUSTICE BRENNAN, concurring.

I join the Court's opinion for the reasons stated therein and in my concurring opinion in *Zobel* v. *Williams,* 457 U. S. 55, 65 (1982).

JUSTICE STEVENS, with whom JUSTICE REHNQUIST and JUSTICE O'CONNOR join, dissenting.

Vietnam veterans are, of course, a distinct minority of the population of New Mexico.[1] The majority has decided to

---

[1] Approximately 55,000 Vietnam veterans reside in New Mexico. U. S. Dept. of Commerce, Bureau of the Census, Statistical Abstract of the United States 1985, p. 346 (105th ed. 1984) (estimate as of 1983), accounting for little more than 3.9% of the population. See *id.,* at 11. Veterans as a whole comprise less than 11.6% of New Mexico's residents. See *id.,* at 11, 346.

provide them with a special benefit that is not available to the average citizen. In my opinion, there can be no question about the constitutionality of that decision, and I believe it is equally clear that there is nothing invidious in the way the State has defined the class of veterans eligible for the benefit. The validity of the classification is unaffected by the form of the benefit or the date of enactment of the statute. It does not violate the Equal Protection Clause of the Fourteenth Amendment.

## I

The New Mexico legislation that is challenged in this case provides a $2,000 property tax exemption to Vietnam veterans (or their unmarried surviving spouses) if the veteran was, among other requirements, a New Mexico resident prior to May 8, 1976.[2] N. M. Stat. Ann. § 7–37–5(C) (1983). This legislation is consistent with the Equal Protection Clause if "the distinction it makes rationally furthers a legitimate state purpose." *Zobel* v. *Williams*, 457 U. S. 55, 60 (1982).

Arguably, this statute raises two questions under the Equal Protection Clause: (1) is there a rational justification for treating the eligible veterans more favorably than the average citizen; and (2) if so, is there any rational justification

---

[2] The legislation is the product of four separate enactments. See *ante*, at 614–615, n. 2. In 1973, the New Mexico Legislature decided to grant a $2,000 property tax exemption to Vietnam veterans who had entered the Armed Forces from New Mexico and had been awarded a campaign medal for service in Vietnam. 1973 N. M. Laws, ch. 258, p. 1052. On three occasions after the original benefit was authorized, the New Mexico Legislature decided to enlarge the class of eligible beneficiaries. In 1975, it eliminated the requirement of a campaign medal for service in Vietnam, 1975 N. M. Laws, ch. 3, p. 11, and in 1981, it eliminated the requirement of residence at the time of enlistment and substituted a requirement of residence prior to May 8, 1975, 1981 N. M. Laws, ch. 187, p. 1078, the last day of the "Vietnam era" as proclaimed by President Ford. Presidential Proclamation No. 4373, 3A CFR 48 (1975). In 1983, it extended eligibility to veterans who had been residents before May 8, 1976. 1983 N. M. Laws, ch. 330, p. 2112.

for not offering the benefit to all veterans who then lived, or might thereafter live, in New Mexico?

The justification for providing a special benefit for veterans, as opposed to nonveterans, has been recognized throughout the history of our country. It merits restatement. First, the simple interest in expressing the majority's gratitude for services that often entail hardship, hazard, and separation from family and friends, and that may be vital to the continued security of our Nation, is itself an adequate justification for providing veterans with a tangible token of appreciation. Second, recognition of the fact that military service typically disrupts the normal progress of civilian employment justifies additional tangible benefits—employment preferences, educational opportunities, subsidized loans, tax exemptions, or cash bonuses—to help overcome the adverse consequences of service and to facilitate the reentry into civilian society. A policy of providing special benefits for veterans' past contributions has "always been deemed to be legitimate."[3]

The historic justification would support a state decision to provide a benefit for *all* Vietnam veterans.[4] This case, however, involves a challenge to a decision to provide a benefit

---

[3] "Veterans have 'been obliged to drop their own affairs to take up the burdens of the nation,' *Boone* v. *Lightner*, 319 U. S. 561, 575 (1943), '"subjecting themselves to the mental and physical hazards as well as the economic and family detriments which are peculiar to military service and which do not exist in normal civil life."' *Johnson* v. *Robison*, 415 U. S. 361, 380 (1974) (emphasis deleted). Our country has a longstanding policy of compensating veterans for their past contributions by providing them with numerous advantages. This policy has 'always been deemed to be legitimate.' *Personnel Administrator of Mass.* v. *Feeney*, 442 U. S. 256, 279, n. 25 (1979)." *Regan* v. *Taxation with Representation of Wash.*, 461 U. S. 540, 550–551 (1983) (footnote omitted).

[4] Although the Court's opinion is ambiguous on this point, see *ante*, at 620, I do not understand it to invalidate laws limiting benefits to veterans who resided in the State immediately prior to induction.

for *some*, but not all, veterans residing in New Mexico. What is the justification for placing any limit on the class of eligible veterans? The most obvious answer is that the State's resources are not infinite. The need to budget for the future is itself a valid reason for concluding that a limit should be placed on the size of the class of potential beneficiaries. And surely that limit may be defined in a way that is intended to direct finite state resources to those who may have a special need.

In this case, New Mexico's legislation reflects, not only an expression of gratitude, but also an attempt to ameliorate the hardship Vietnam veterans experienced upon seeking to integrate or reintegrate themselves into New Mexican society. The transition from military to civilian life has always been a difficult one. That transition is furthered by a state decision to provide a benefit for those veterans who once had roots in the State and had returned, or decided to settle in the State, after their military service ended. New Mexico's modest monetary benefit can be reasonably understood as both a tangible and symbolic "welcome home" to veterans returning to New Mexico from the Far East as well as to those deciding to establish their domiciles in the State for the first time. The legislation simply reflects and recognizes the State's felt obligation to facilitate the difficult transition of veterans from the battlefields of Asia to civilian life in New Mexico.

Of course, the legislature might have crafted a more elaborate set of eligibility criteria, but since exclusion from the favored class merely places the ineligible veteran in the same class as the majority of the citizenry, there is no constitutional objection to the use of a simple, easily administered standard. The statutory requirement of residence before May 8, 1976, is not a perfect proxy for identifying those Vietnam veterans seeking admission or readmission into New Mexican society, but "rational distinctions may be made with substantially less than mathematical exactitude." *New Orleans* v. *Dukes*, 427 U. S. 297, 303 (1976).

## II

In my opinion, the validity of the State's classification is not undermined by the fact that it takes the form of a modest annual tax exemption instead of a cash payment or gold medal. It is true that the continuing character of the exemption differentiates the eligible veteran from the rest of the citizenry over an extended period of time, but I fail to see how that fact bears on the rationality of the classification. If New Mexico had awarded gold medallions to all of its resident veterans on May 1, 1976, I believe it would be absurd for a veteran arriving in the State in 1981 to claim that he or she had a constitutional right either to a comparable medal or to have all other medal recipients return them to the State.

In like manner, New Mexico by this legislation has provided, in effect, a modest annuity for veterans who own real property. Again, it is surely rational for the State to provide this form of assistance rather than a lump-sum cash bonus. To begin with, a one-time cash bonus would concentrate the fiscal burden of the veterans benefit in one budget year, perhaps preventing New Mexico from awarding any meaningful veterans benefit at all.[5] Rather than providing a trivial token of esteem, the State may have decided to provide an annual and therefore recurring benefit which would, over time, amount to a more significant recognition of service to returning veterans. The perennial character of its tax exemption may have been especially important in the minds of New Mexico's legislators if their objective was to provide a symbolic expression of New Mexico's invitation to rejoin the community on a long-term basis: The recurring form of the benefit provided symbolic reassurance of state support year

---

[5] After World War II, for example, the legislature decided to extend a property tax exemption to veterans of that war because it felt unable to finance a lump-sum cash bonus. For the background of this decision, see Albuquerque Journal, Mar. 10, 1947, p. 2, col. 4; *id.*, Feb. 25, 1947, p. 1, col. 3; *id.*, Jan. 19, 1947, p. 4, cols. 4–5; *id.*, Jan. 8, 1947, p. 1, cols. 2–3; *id.*, Jan. 5, 1947, p. 10, col. 2.

after year. In so doing, the State might sensibly have expected to instill in returning Vietnam veterans a sense of security and peace of mind after the tumult of that conflict.

For these reasons, New Mexico's statute is not at all like the Alaska dividend program struck down in *Zobel* v. *Williams*, 457 U. S. 55 (1982). The dividend program involved in *Zobel* created "an ever-increasing number of perpetual classes of concededly bona fide residents, based on how long they have been in the State." *Id.*, at 59. Every recent arrival was treated less favorably than those who had arrived earlier. The vast majority of dividend recipients were thus treated more favorably than the newly arrived minority. In this case, in contrast, the alleged victim of the discrimination is being treated exactly like the vast majority of New Mexico's residents. In *Zobel*, the program had no rational justification other than a purpose to allocate a cash surplus among the majority of the citizenry on the basis of the duration of their residence in the State. In this case, the duration of the veteran's residence is irrelevant and the distribution to the members of the favored class is supported by a legitimate state interest.[6] There is a world of difference between a decision to provide benefits to some, but not all, veterans and a decision to divide the entire population into a multitude

---

[6] The Court, however, makes the following remarkable statement:

"The New Mexico statute, by singling out previous residents for the tax exemption, rewards only those citizens for their 'past contributions' toward our nation's military effort in Vietnam. *Zobel* teaches that such an objective is 'not a legitimate state purpose.' 457 U. S., at 63." *Ante,* at 622–623.

Of course, what *Zobel* taught was that "past contributions" amounting to nothing more than residence in the State do not justify discrimination in favor of long-time residents; *Zobel* surely did not imply that past contributions to the Nation's military effort would not justify a special reward, as the Court implicitly acknowledges when it recognizes as legitimate this Nation's " 'longstanding policy of compensating veterans for their past contributions by providing them with numerous advantages.' " *Ante,* at 620 (quoting *Regan* v. *Taxation With Representation of Wash.*, 461 U. S., at 551).

of classes differentiated only by length of residence. The State's refusal to provide appellant with a veteran's benefit has not branded him with any badge of inferiority. He has not been treated as a "second class citizen" in any sense. Rather, he has merely received precisely the same treatment as the vast majority of the residents of New Mexico.

## III

The Court finds constitutionally significant the fact that the May 8, 1976, cut-off date was not enacted until 1983,[7] and in its understanding of the application of the statute to a veteran who had merely resided in New Mexico as an infant. See *ante*, at 622. Neither point is valid.

Tellingly, the initial version of New Mexico's property tax exemption for Vietnam-era veterans—which was enacted in 1973—had an effective date of January 1, 1975. Even if the Court's concern with "retroactive apportionment of an economic benefit," *ante*, at 623, were valid—and the constitutional defect in retroactivity is never explained—the originating legislation simply was not retroactive.[8] Thus, the Court's point at best is limited to the state legislature's decision on two subsequent occasions to liberalize the statutory requirements by extending the cut-off date for eligibility. But the Court does not—and cannot—explain why New

---

[7] See *ante*, at 621.

[8] Indeed, the New Mexico Legislature frequently extended the property tax exemption to veterans on a prospective basis. See 1933 N. M. Laws, ch. 44, p. 47 (approved Mar. 1, 1933, and applicable to all veterans of World War I resident as of Jan. 1, 1934); 1923 N. M. Laws, ch. 130, p. 193 (approved Mar. 12, 1923, and applicable to all resident veterans). Other legislation was retroactive only by a few months. See 1947 N. M. Laws, ch. 79, p. 116 (approved Mar. 13, 1947, and applicable to all veterans of World War II resident as of Jan. 1, 1947). But see 1957 N. M. Laws, ch. 169, p. 256 (approved Mar. 28, 1957, and applicable to all Korean conflict veterans resident as of Jan. 1, 1955).

Mexico's belated recognition that its veterans' assistance program was incomplete[9] renders it *ipso facto* unconstitutional.

Even if New Mexico's action were wholly retroactive I would find no constitutional defect. The New Mexico Legislature could reasonably conclude that for many Vietnam veterans the transition from military service to civilian life in New Mexico was still incomplete. New Mexico could further reasonably conclude that some assistance, at once tangible and symbolic, was required to complete the task. I do not think it unconstitutional for New Mexico to presume that Vietnam veterans who arrived in that State more than a year after the end of the Vietnam epoch had successfully readjusted to civilian life in a sister State prior to migrating to New Mexico.[10] Under this view, appellant simply was not in New Mexico when the conditions justifying the assistance were deemed to exist. The late-arriving Vietnam veteran is treated as well as the overwhelming majority of immigrants to the State; until today's decision, I would not have thought that the Constitution required New Mexico to do more.

In an attempt to highlight the asserted irrationality of the New Mexico statute, the Court asserts that an unquantifiable few late-in-coming Vietnam veterans might qualify for the property tax exemption:

> "[T]he veteran who resided in New Mexico as an infant long ago would immediately qualify for the exemption upon settling in the State at any time in the future

---

[9] The 1983 law was captioned as an amendment "to enlarge the period during which a Vietnam veteran may qualify for an exemption from property taxes." 1983 N. M. Laws, ch. 330, p. 2111.

[10] Nor would I hold unconstitutional a provision in a State's veterans' assistance law which excluded veterans who had already received benefits in another State. New Mexico's limitation of eligibility to Vietnam veterans taking up residence in the State prior to May 8, 1976, may in purpose and in practice have served to prevent "double-dipping" of just this kind.

regardless of where he resided before, during, or after military service." *Ante,* at 622.

The New Mexico Court of Appeals, however, did not adopt this construction of the statute: it did not reach this state-law question because appellant did not have standing to raise it.[11] There is thus nothing in the record to support the Court's assumption that if a veteran who resided in New Mexico as an infant should now return to the State, he or she would qualify for the tax exemption. It hardly befits a federal court that is committed to a policy of avoiding constitutional questions whenever possible to volunteer an unnecessary interpretation of a state statute in order to create a constitutional infirmity. But there is a more fundamental defect in the Court's argument—indeed, in its entire analysis.

Even if there are a few isolated cases in which the general classification produces an arbitrary result, that is surely not a sufficient reason for concluding that the entire statute is unconstitutional:

> "The mere fact that an otherwise valid general classification appears arbitrary in an isolated case is not a sufficient reason for invalidating the entire rule. Nor, indeed, is it a sufficient reason for concluding that the application of a valid rule in a hard case constitutes a

---

[11] The State Court of Appeals wrote:

"Hooper points out that the statute is unclear as to whether the requirement at issue is a continuous residency requirement and that a veteran with only one day of New Mexico residency, immediately followed by an extended period of nonresidency prior to May 8, 1976, might qualify for the exemption where Alvin D. Hooper does not.

"Such arguments are not, standing alone, sufficient to allow this court to consider the issues raised. The exemption was not denied on either ground raised in support of this position. Hooper does not have standing to challenge the statute on the due process grounds of vagueness raised, and we decline to issue an advisory opinion on the matter. *Advance Loan Co.* v. *Kovach,* 79 N. M. 509, 445 P. 2d 386 (1968); *Asplund* v. *Alarid,* 29 N. M. 129, 219 P. 786 (1923)." 101 N. M. 172, 177, 679 P. 2d 840, 845 (1984).

violation of equal protection principles. We cannot test the conformance of rules to the principle of equality simply by reference to exceptional cases." *Caban* v. *Mohammed*, 441 U. S. 380, 411–412 (1979) (STEVENS, J., dissenting) (footnotes omitted).

See also *Vance* v. *Bradley*, 440 U. S. 93, 108 (1979); *Califano* v. *Jobst*, 434 U. S. 47, 56–58 (1977); *Dandridge* v. *Williams*, 397 U. S. 471, 485 (1970).

New Mexico has elected to express its gratitude to the veterans of the Vietnam conflict by providing a modest tax exemption for those who resided in the State before May 8, 1976. Those veterans who arrived thereafter are treated exactly like the nonveterans who constitute the majority of the State's population. In my opinion, there is no substance to the claim that this classification violates the principle of equality embodied in the Equal Protection Clause of the Fourteenth Amendment to the Constitution.[12]

Accordingly, I respectfully dissent.

---

[12] I also discern no substance to appellants' claim that the statutory classification violates the Due Process Clause of the Fourteenth Amendment. I further note that appellants' jurisdictional statement raised no claim that New Mexico's statute violates the Privileges and Immunities Clause of Article IV of the Constitution.