ROBERT M. PARKER, Circuit Judge,
specially concurring:
I concur in the opinion except for Section V. I choose not to join Section V, which concludes that the right to keep and bear arms under the Second Amendment is an individual right, because it is dicta and is therefore not binding on us or on any other court. The determination whether the rights bestowed by the Second Amendment are collective or individual is entirely unnecessary to resolve this case and has no bearing on the judgment we dictate by this opinion. The fact that the 84 pages of dicta contained in Section V are interesting, scholarly, and well written does not change the fact that they are dicta and amount to at best an advisory treatise on this long-running debate.
As federal judges it is our special charge to avoid constitutional questions when the outcome of the case does not turn on how we answer. See Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)(“If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.”); Walton v. Alexander, 20 F.3d 1350, 1356 (5th Cir.1994)(Garwood, J., concurring specially)(“It is settled that courts have a strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration.”)(internal quotations omitted). Following this cardinal rule, we will *273 not, for example, pick and choose among dueling constitutional theories when under any construction the challenged provision is invalid. See Hooper v. Bernalillo County Assessor, 472 U.S. 612, 621 n. 11, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985). Nor will we decide a constitutional question when under any construction the challenged provision must be sustained. See O’Connor v. Nevada, 27 F.3d 357, 361 (9th Cir.1994); Bullock v. Minnesota, 611 F.2d 258, 260 (8th Cir.1979). Furthermore, the fact that a trial court passed on a novel question of constitutional law does not require us to do likewise. Appellate courts are supposed to review judgments, not opinions. See Texas v. Hopwood, 518 U.S. 1033, 1033, 116 S.Ct. 2581, 135 L.Ed.2d 1095 (1996). Here, whether “the district court erred in adopting an individual rights or standard model as the basis for its construction of the Second Amendment,” Maj. Op. at 221, is not a question that affects the outcome of this case no matter how it is answered. In holding that § 922(g)(8) is not infirm as to Emerson, and at the same time finding an individual right to gunownership, the majority today departs from these sound precepts of judicial restraint.
No doubt the special interests and academics on both sides of this debate will take great interest in the fact that at long last some court has determined (albeit in dicta) that the Second Amendment bestows an individual right. The real issue, however, is the fact that whatever the nature or parameters of the Second Amendment right, be it collective or individual, it is a right subject to reasonable regulation. The debate, therefore, over the nature of the right is misplaced. In the final analysis, whether the right to keep and bear arms is collective or individual is of no legal consequence. It is, as duly noted by the majority opinion, a right subject to reasonable regulation. If determining that Emerson had an individual Second Amendment right that could have been successfully asserted as a defense against the charge of violating § 922(g)(8), then the issue would be cloaked with legal significance. As it stands, it makes no difference. Section 922(g)(8) is simply another example of a reasonable restriction on whatever right is contained in the Second Amendment.
And whatever the scope of the claimed Second Amendment right, no responsible individual or organization would suggest that it would protect Emerson’s possession of the other guns found in his military-style arsenal the day the federal indictment was handed down. In addition to the Beretta nine millimeter pistol at issue here, Emerson had a second Beretta like the first, a semi-automatic M-l carbine, an SKS assault rifle with bayonet, and a semiautomatic M-14 assault rifle. Nor would anyone suggest that Emerson’s claimed right to keep and bear arms supercedes that of his wife, their daughter, and of others to be free from bodily harm or threats of harm. Though I see no mention of it in the majority’s opinion, the evidence shows that Emerson pointed the Beretta at his wife and daughter when the two went to his office to retrieve an insurance payment. When his wife moved to retrieve her shoes, Emerson cocked the hammer and made ready to fire. Emerson’s instability and threatening conduct also manifested itself in comments to his office staff and the police. Emerson told an employee that he had an AK-47 and in the same breath that he planned to pay a visit to his wife’s boyfriend. To a police officer he said that if any of his wife’s friends were to set foot on his property they would “be found dead in the parking lot.”
If the majority was only filling the Federal Reporter with page after page of non *274 binding dicta there would be no need for me to write separately. As I have said, nothing in this case turns on the original meaning of the Second Amendment, so no court need follow what the majority has said in that regard. Unfortunately, however, the majority’s exposition pertains to one of the most hotly-contested issues of the day. By overreaching in the area of Second Amendment law, the majority stirs this controversy without necessity when prudence and respect for stare decisis calls for it to say nothing at all. See Cass R. Sunstein, One Case at a Time: Judicial Minimalism and the Supreme Court 5 (1999)(“[A] minimalist path usually — not always, but usually — makes a good deal of sense when the Court is dealing with a constitutional issue of high complexity about which many people feel deeply and on which the nation is divided (on moral or other grounds).”) (italics in original). Indeed, in the end, the majority today may have done more harm than good for those who embrace a right to gunownership.