T.C. Memo. 2004-125


UNITED STATES TAX COURT


CHARLES DURHAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5185-02.              Filed May 25, 2004.


<u>Maurice W. Gerard</u>, for petitioner.

<u>Caroline R. Krivacka</u>, for respondent.


MEMORANDUM OPINION


HOLMES, <u>Judge</u>:  Section 6404(e) of the Code[1] gives the

Commissioner power to abate interest that has accrued on unpaid

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code; Rule references are to the Tax Court
Rules of Practice and Procedure; Constitution references are to
the Constitution of the United States.

taxes. In 1996, Congress amended the section to allow abatement more often, but made the amendment effective only for interest accruing on tax deficiencies or payments for tax years beginning after the date of enactment--July 30, 1996. Petitioner, Charles Durham, was under audit for his 1992-94 tax years when the amendment was enacted. He wants to take advantage of the amendment's terms, and so challenges the constitutionality of its effective date. The case comes to us on cross-motions for summary judgment.

## Background

Before the 1996 amendment, the Commissioner could abate interest under section 6404(e) only when interest had accrued because of an IRS employee's error or delay in performing a "ministerial act." Sec. 6404(e) (1994) ("old section 6404(e)"); see Woodral v. Commissioner, 112 T.C. 19, 24-25 (1999). But "ministerial act" was narrowly defined as "a procedural or mechanical act that does not involve the exercise of judgment or discretion...." Proced. & Admin. Regs., sec. 301.6404-2T(b)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[2] This definition captured only such bureaucratic snafus as delays in transferring a case between offices or in issuing an already agreed-upon notice of deficiency. Id. Examples (1) and (2).

---

[2] The identical definition carried over to the final regulations in effect for tax years commencing after July 30, 1996. Proced. & Admin. Regs., sec. 301.6404-2(b)(2).

Congress came to think that other sorts of delays called for relief from the relentless accrual of interest. The 1996 amendment ("new section 6404(e)") therefore empowered the Commissioner to abate interest caused by any "unreasonable error or delay by an officer or employee of the Internal Revenue Service * * * in performing a ministerial or managerial act." Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1452, 1457 (1996) (emphases added). "Managerial" acts include such mistakes as "the temporary or permanent loss of records" and, more generally, mistakes in the "exercise of judgment or discretion relating to management of personnel." Proced. & Admin. Regs., sec. 301.6404-2(b)(1).

Petitioner's problems began in April 1995, when the IRS started to audit his 1992 tax return. The IRS later expanded the audit to his 1993 and 1994 returns. The audit went slowly: in January 1996, the IRS reassigned the first revenue agent working on this case to other matters and didn't put a second agent on it until May 1996. A year later, the case went to the IRS's Appeals Office. The Appeals officer concluded that the audit needed additional work and returned the case to the district office in November 1997, where it went into suspended animation. Respondent blames this on petitioner's attorney, and petitioner blames it on respondent's personnel assignments and mishandling of files. Work finally resumed in early 1999, and the parties

closed the case in March 1999 with petitioner's agreeing to the assessment and collection of deficiencies for 1992-94.

In October 1999, petitioner asked respondent to abate at least part of the accrued interest, citing respondent's delays in handling the case. Respondent issued his final determination in August 2001. It completely disallowed petitioner's request, and this appeal followed.

Petitioner has at all relevant times been a resident of Tennessee, and this case was originally set to be tried in Knoxville. Before trial, however, both parties moved for summary judgment. Respondent's motion was simple: Petitioner's allegations of IRS errors all involved "managerial" acts. Proced. & Admin. Regs., sec. 301.6404-2(b)(1). Section 6404(e) allows respondent to abate interest for delays caused by managerial acts, but only for tax years after 1996. The years involved here were 1992-94. Therefore, respondent could not abate interest.

Petitioner's motion agrees with respondent's, right up to the "therefore". He argues that the effective date in the statute is trumped by the Constitution, whose guarantees of equal protection make an effective date based on when a tax year commenced, rather than when IRS misfeasance occurred,

unconstitutional.  He concedes, as he stated in his last filing with the Court, that "if the effective date . . . was Congress' intent and does not violate Petitioner's constitutional rights, then the acts taken by Respondent would be within the statutory authority."

The parties thus agree that, for purposes of these motions, delays occurred in respondent's handling of the case, and those delays were due to "managerial" acts.  The parties also agree that petitioner would not be entitled to an abatement of interest under old section 6404(e), but would be under new section 6404(e).  We therefore need not untangle the parties' contradictory positions on who and what caused how much delay; and the case is ripe for decision on this disputed, and apparently novel, legal issue.[3]

---

[3] Petitioner's concession also frees us of having to analyze whether some of the delay was the result of what we might consider ministerial acts under the old temporary regulations. See Palihnich v. Commissioner, T.C. Memo. 2003-297 (IRS's 11-year failure to process amended returns after losing them was "ministerial act" under sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987)).

## Discussion

Although petitioner makes passing efforts to argue that the effective date doesn't mean what it says[4] or fails to correctly reflect Congress's intent,[5] his main argument is grounded in equal protection law.[6]  He contends that all victims of managerial errors committed after July 30, 1996 should be treated equally; and that Congress, by applying new section 6404(e)'s interest abatement provisions only to tax years beginning after

_____

[4] He suggests that the effective date provision was an oversight by Congress that is capable of judicial revision. However, we note that new section 6404(e)'s effective date is but one of many in that section of Taxpayer Bill of Rights 2--notably including the one governing the right to judicial review (formerly section 6404(g), now section 6404(h)), Pub. L. 104-168 sec. 302 (effective date based on time of request for interest abatement).  Even if we had a general power of judicial correction, this close proximity of different effective dates shows that Congress did pay attention to such provisions and was capable of making a different choice if it had wished.

[5] Petitioner argues that applying the effective date as written would thwart Congress's clearly expressed intent that taxpayers not suffer the ill effects of bureaucratic gaffes by the IRS.  But his only evidence of this intent is a quote that the purpose of amending section 6404 was "to provide for increased protections of taxpayer rights in complying with the Internal Revenue Code . . . ."  H. Rept. 104-506 at 22 (1996), 1996-3 C.B. 49, 70.  So general a statement of legislative purpose is insufficient to overcome the plain meaning of the amendment's effective date.

[6] The Due Process Clause of the Fifth Amendment provides guarantees against the Federal Government that are essentially identical to those provided against the States by the Fourteenth Amendment's Equal Protection Clause.  Bolling v. Sharpe, 347 U.S. 497, 499 (1954).

that date, unfairly discriminated between two classes of similarly situated taxpayers.

He asks us to imagine two taxpayers, A and B. A has a deficiency for the 1996 tax year, and B has one for the 1997 tax year. A and B are dealing with the same IRS agent, who while handling their cases is sent for a prolonged bout of training (clearly a managerial act) that causes unreasonable delays in the resolution of both cases. If the effective date of new section 6404(e) is constitutional, however, only B would be allowed an interest abatement, despite A and B's both being in apparently identical predicaments. Petitioner contends that no justification exists for this disparate treatment.

Petitioner faces daunting odds, though, because such fine distinctions are common in the law, and particularly common in tax law. Courts have long held that "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes." Regan v. Taxation With Representation of Wash., 461 U.S. 540, 547 (1983). And the burden is on the taxpayer to negate "every conceivable basis which might support it." Id. at 547-548.

This judicial deference flows from a recognition that--as a practical matter--Congress will often have to draw distinctions between different taxpayers who seem in some ways to be in

similar positions. "No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973). As with laws granting economic benefits, drawing distinctions "inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the [same] line . . . ." FCC v. Beach Communications, Inc., 508 U.S. 307, 315-316 (1993).[7] Yet courts have repeatedly held that these distinctions do not violate the Constitution's guarantee of equal protection. Instead they reflect Congress's exercise of its legitimate prerogative to enact laws with an eye to their practical administration and cost to the fisc.

Petitioner's argument is thus defective in its implicit premise that distinctions drawn in tax legislation be entirely logical. This is not to say that Congress has unbridled authority to selectively tax the citizenry, but only that courts

---

[7] It might be possible to review new section 6404(e)'s constitutionality under precedents involving the granting of economic benefits, instead of those imposing a tax. But this would have little impact on the analysis, and none on the result. Ultimately, both "economic benefit" cases and tax classification cases are subject to "rational basis" review. See, e.g., N.Y. Rapid Transit Corp. v. City of New York, 303 U.S. 573, 578 (1938).

will uphold classifications in tax legislation if they have *any* rational basis--unless they impinge a fundamental right or use a suspect classification. See <u>Hamilton v. Commissioner</u>, 68 T.C. 603, 606 (1977). If this case featured one of those classifications, it would trigger a different kind of scrutiny. As the Supreme Court noted in <u>Regan</u>, "The case would be different if Congress were to discriminate invidiously in its subsidies in such a way as to aim at the suppression of dangerous ideas" (internal citations omitted). 461 U.S. at 548. See also <u>Hooper v. Bernalillo County Assessor</u>, 472 U.S. 612, 623 (1985) (greater scrutiny may be required when tax distinctions are made on the basis of durational residence requirements).

Petitioner does not argue that Congress was impinging on any fundamental right or making any suspect classification, but only that new section 6404(e)'s effective date lacks any rational basis. And although petitioner's is the first challenge to the constitutionality of this particular part of the Code, history shows that few "rational basis" challenges succeed--the deference courts pay to legislatures when reviewing any statute for a rational basis being a "paradigm of judicial restraint," <u>Beach Communications</u>, 508 U.S. at 314. While there are even tax laws struck down under rational basis review, e.g., <u>Allegheny Pittsburgh Coal Co. v. County Commn. of Webster County</u>, 488 U.S.

336 (1989), petitioner's problem is that any rational basis--whether articulated by Congress or hypothesized by a court--will suffice.[8]

One obvious rational basis for new section 6404(e)'s effective date is simple administrative convenience.  In enacting new section 6404(e), Congress needed to define the situations that would and would not be subject to its provisions.  Taking into account that income taxes are levied on an annual basis, it was rational for Congress to restrict the amendment's application by tax year, limited to liabilities for tax years beginning after the date of enactment and so giving the IRS some time to adjust its own administrative routine at a lower cost to the Government.  Considerations of administrative convenience have long been recognized as a valid reason for legislative line drawing.  See N.Y. Rapid Transit, 303 U.S. at 580-581; Carmichael v. S. Coal & Coke Co., 301 U.S. 495, 511 (1937).  We need not, indeed we must not, engage in judicial second-guessing of such a legislative decision:  "The fact that another reasonable classification or

---

[8] Courts have traditionally granted even greater deference to distinctions drawn by tax laws than they have to distinctions drawn by laws in other "rational basis" areas.  See, e.g., Kelso, "Equal Protection After the Rational Basis Era:  Is it Time to Reassess the Current Standards of Review?", 4 U. Pa. J. Const. L. 225, 230-231 (2002) (recognizing that there exists a "second-order" rational review more stringent than the one applied in Allegheny Pittsburgh Coal).

even more reasonable classification exists does not render violative of due process the classification Congress has chosen." Hamilton, 68 T.C. at 608. Because we cannot say that new section 6404(e)'s effective date is without a rational basis,

> An order and decision will be entered granting respondent's, and denying petitioner's, motion for summary judgment.