Anthony PARENTE

v.

The TOWN OF WEST WARWICK, David
C. Brindamour, Individually and as
Town Treasurer for the Town of West
Warwick: Members of the Town Coun-
cil for the Town of West Warwick:
George McKenna, President Individual-
ly and in his official capacity; Rita
Levesque, Vice President Individually
and in her official capacity; Albert
Ruzzo, Allen Simpkins, and Jean Roch,
Individually and in their official capac-
ity as Members of the Town Council for
the Town of West Warwick; and the
Members of the Town of West Warwick
Pension Committee: Joseph Carnevale,
Individually and as Chairman of the
Pension Committee; and Peter Catau-
ro, John Bahl, Lloyd Trivett and Diane
DiRousi, Individually and in their offi-
cial capacity as Members of the Town
of West Warwick Pension Committee.

Civ. A. No. 87–0111 L.

United States District Court,
D. Rhode Island.

May 12, 1988.

Amato DeLuca, Revens and DeLuca,
Warwick, R.I., for plaintiff.

Daniel Harrop, West Warwick Town Sol.,
West Warwick, R.I., for defendants.

## OPINION

LAGUEUX, District Judge.

This is an action brought under 42 U.S.C.
§ 1983. Plaintiff Anthony Parente essen-
tially seeks to require that defendants
award him pension benefits pursuant to the
Town of West Warwick's pension plan.

Plaintiff, a former firefighter in the Town had his pension rights terminated under § 6.03 of the plan in early 1984. § 6.03 provides that a pensioner's benefits may be terminated if he is "convicted by a court of competent jurisdiction" for "criminal action" "in connection with his position." Plaintiff claims that the hearings he was afforded by defendants were so constitutionally deficient as to deny him benefits without due process of law. In addition, he claims that the pension termination provision itself is violative of the Fourteenth Amendment's equal protection clause.

The facts and travel of this case are as follows. Plaintiff is a resident of the Town of West Warwick, Rhode Island and was a full time member of the West Warwick Fire Department commencing in 1954.

Plaintiff has brought this suit against three sets of defendants: The Town of West Warwick (the Town) via David C. Brindamour, Town Treasurer; the West Warwick Pension Committee (the Pension Committee), and the West Warwick Town Council (the Town Council). Plaintiff's claims against the last two of these groups are brought against the members of the Pension Committee and the Town Council in their individual and official capacities. The Pension Committee is composed of four members. They are: Joseph Carnevale, Chairman; John Bahl, Lloyd Trivett and Diane DiRousi. The members of the Town Council are five in number. They are: George McKenna, President; Rita Levesque, Vice–President; Albert Ruzzo, Allen Simpkins and Jean Roch.

Plaintiff's difficulties in this matter arose on or about March 14, 1980, when a jury at the Kent County Superior Court found him guilty of conspiracy to commit statutory burning of a warehouse. His part in the scheme was to delay the response time of the fire apparatus. He subsequently appealed his conviction to the Rhode Island Supreme Court. Pending disposition of the appeal, he remained on the job as Battalion Chief for the West Warwick Fire Department. On May 14, 1983, the Rhode Island Supreme Court denied his appeal and affirmed his conviction.

On May 18, 1983, the Town Council held a meeting at which it voted to terminate plaintiff from his employment with the Town's fire department. After receiving notice of termination, plaintiff requested a hearing before the Town Council.

Approximately three weeks later, the Town Council held a hearing regarding plaintiff's termination, and voting 4 to 0, with one member abstaining, upheld its prior decision to terminate him. Notice of this decision was sent to plaintiff on June 15, 1983.

On January 25, 1984, plaintiff submitted a written request for pension benefits to the Pension Committee. Two weeks later on February 5, 1984, the Pension Committee held a meeting at which plaintiff was present. He made a plea for compassion on his own behalf and requested that he be awarded benefits. Following the meeting, the Pension Committee voted to deny him benefits and to return his contributions to the pension plan as follows:

A motion was made and seconded to turn down a request for pension from Anthony Parente, under Section 6.03 of the Pension Plan, which states: 6.03 *Dishonesty*

Prior to the termination of the Plan or permanent discontinuance of contributions thereunder, and notwithstanding any other provisions of the Plan if a Member leaves the employ of the Town, is discharged from the services of the Town and is discovered to have been involved in an act stated to involve dishonesty, fraud or criminal action on part of such Member in connection with his position and if the Member signs a written confession admitting such dishonesty, fraud or criminal action, or the Member is convicted by a court of competent jurisdiction for such act, such Member shall forfeit any and all benefits under the Plan, except a return of contributions, whether or not vested under any provisions of this Plan.

The motion was passed by all the members.

A motion was made and seconded to return to Anthony Parente the contributions that he paid into the Pension Plan. The amount of his contributions comes to $11,163.65. The motion was passed by all members.

On February 8, 1984, the Pension Committee authorized the payment of the $11,-163.65. Because of an order of the United States Bankruptcy Court for the District of Rhode Island, this sum was turned over to plaintiff's trustee in bankruptcy.

In late February of 1984, plaintiff's son, Michael Parente, filed a written request for a hearing before the Pension Committee on behalf of his father. On March 15th, the Pension Committee met and allowed Michael Parente to plead his father's case i.e., that plaintiff be allowed to retain his pension benefits. The Pension Committee did not reconsider its previous decision to deny plaintiff the benefits and met no further with regards to the matter.

On September 5, 1984, plaintiff filed a claim and demand for pension benefits on the Town Council pursuant to R.I.Gen. Laws, 1956, § 45-15-5 (1980 Reenactment). Almost two years passed by before the Town Council, on July 8, 1986, passed a resolution advising plaintiff, that it would not consider his claim for pension benefits. Under that statute, plaintiff had a right after the passage of 40 days after submission of his claim, to bring an action in a Rhode Island Court and have his rights to a pension fully litigated. He never commenced an action in state court with regard to his claim for pension benefits.

No further action appeared to take place in this matter between the parties until early 1987. In February 1987, plaintiff filed a complaint in this Court alleging three causes of action. For his first cause of action, plaintiff alleged that defendants deprived him of property without due process of law. In essence, plaintiff disputes the sufficiency of the hearings that he received before the Pension Committee and Town Council.

For his second cause of action, plaintiff averred that § 6.03 of the West Warwick Pension Plan was "unenforceable and void in that it constitutes an impermissible forfeiture in violation of 29 U.S.C. § 1053."

Lastly, plaintiff complained that § 6.03 deprives him of equal protection of the laws. That section plaintiff contends, impermissibly allows persons convicted of crimes that were not committed in connection with their positions to collect benefits while denying benefits to persons convicted of crimes that were committed within the scope of their employment.

In early March of 1987, plaintiff amended his complaint without changing the content of his three stated causes of action. Later in March, defendants moved to dismiss the amended complaint. On May 28, 1987, the Court granted defendants' motion as to plaintiff's second cause of action, but denied defendants' motion as to plaintiff's first and third causes of action.

Defendants proceeded to answer plaintiff's amended complaint in June of 1987. In the Fall of 1987 the Court entered a Pre-Trial Order closing discovery by December 4, 1987 and requiring pre-trial memoranda to be submitted by January 8, 1988.

On January 28, 1988, the parties filed a detailed Agreed Statement of Facts and exhibits. Since the issues to be resolved are purely legal in nature, the Court proceeded to set a schedule for the parties to submit a series of additional memoranda in the case. After the last brief was submitted on March 21, 1988, the matter was taken under advisement. The case is now ripe for decision.

Plaintiff first contends that the Pension Committee and Town Council denied him property without "due process of law" in violation of the Fourteenth Amendment to the United States Constitution. The focus of plaintiff's due process claim is that the Pension Committee and Town Council failed to afford plaintiff "any kind of hearing whatsoever with regard to the denial of his pension benefits."

In support of this allegation with respect to the Pension Committee, plaintiff points to the fact that the Town Council noted without dissent at his employment termi-

nation hearing that plaintiff "had not been convicted of a charge that he had slowed the response time of fire engines." Had the Pension Committee's hearing been constitutionally sufficient, plaintiff seems to argue, the purported fact that plaintiff's criminal activity was not conducted in connection with his position would have come to the Committee's attention. The Committee then presumably would have voted to grant plaintiff's request for benefits.

As to defendant Town Council, plaintiff's due process argument is more direct. Plaintiff contends that the Town Council denied him property without due process because it simply chose not to consider plaintiff's claim and demand for pension benefits. The Town Council, he contends was constitutionally required to afford him a hearing at which he could contest the decision of the Pension Committee.

Where the denial of property without due process of law is at issue, the United States Supreme Court has directed federal district courts to undertake a two-step analysis. First, the Court must decide whether a property right is at stake. Secondly, the Court must proceed to determine whether defendants have deprived plaintiff of that right without due process of law. *Brock v. Roadway Exp., Inc.*, —— U.S. ——, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987).

The Court need not address the first of these two steps. Assuming plaintiff has a property right in vested pension benefits, he has not been deprived of that right without due process of law.

In addressing the second step, the Court follows the standard delineated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). There, it was indicated that the dictates of due process require consideration of three factors.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 336, 96 S.Ct. at 903.

The first of these factors is easily analyzed. The pension benefits in question constitute a large portion of plaintiff's post-retirement income. If plaintiff has a right to such benefits, his right is obviously quite substantial.

Nonetheless, loss of this substantial right is more than counterbalanced by application of the second and third factors of the *Mathews* test. The procedures used by the Pension Committee pose little if any risk of erroneous deprivation. Plaintiff was present at the meeting in which the Pension Committee voted to deny his request for benefits and to return the contributions that he had paid into the pension system. Moreover, he was given an opportunity, and in fact, made a plea that his request for benefits be granted. Finally, plaintiff's son was given a post-denial opportunity to plead his father's case before the Committee. The truth is plaintiff simply disagrees with the Pension Committee's decision. He has no real dispute with the process that the committee afforded him.

The additional procedural safeguard, that plaintiff claims would have decreased the risk of erroneous deprivation, would not have had any effect on the ultimate conclusion in this case. Plaintiff contends that had the Pension Committee made "findings of fact" as to its reasons for denying plaintiff's claim, the purported fact that plaintiff's crime was not committed in connection with his position would have come to light. Plaintiff's claim for benefits, then, presumably would have been granted. Plaintiff's argument misses the mark by a wide margin.

Had the Pension Committee made findings of fact in this case, it would have reached the same conclusion it did on February 5, 1984. It merely would have stated that plaintiff was convicted of the crime of conspiracy to commit statutory burning and that this crime clearly was committed in connection with his position. The Presi-

dent of the Town Council thought as much in May of 1983.

Said conviction by the Superior Court of the State of Rhode Island shows malfeasance in your office and conduct unbecoming a member of the Fire Department.

(Exhibit C).

Findings of fact regarding the denial of plaintiff's benefits would not have decreased the risk of erroneous deprivation for another reason. Plaintiff knew well before the Pension Committee meeting that the position he should take if he had any hope of retaining his pension was that his crime was not committed in connection with his position. Plaintiff conceded that as of June 6, 1983, when the Town Council held its meeting regarding his employment termination. It was noted then that plaintiff had not been convicted of a charge "that he had slowed the response time of fire engines." He was convicted of conspiracy i.e., agreeing to aid in the burning of the warehouse by slowing the response time of his battalion. Parente had an opportunity to present these facts to the Pension Committee in February of 1984; however, he simply failed to do so.

Findings of fact which merely preserve on the record, evidence presented at hearing would have been superfluous in this case. Plaintiff chose not to present the evidence he now claims entitles him to pension benefits. There was simply nothing, then, for the Pension Committee to find except that he was convicted of being part of a conspiracy to burn down a warehouse.

The third factor in *Mathews* also weighs in favor of the conclusion that the process plaintiff received was due. Requiring committees to make formal findings of fact concerning decisions would increase the fiscal and administrative burdens on municipalities. More time as well as a greater amount of paper work would be generated by such a requirement. In turn, more administrative personnel would be needed to process the paper and to preserve the formal findings of fact. These types of expenses are needless in routine cases like the present one where the criminal convic-

tion determines the outcome of the case itself. Plaintiff was convicted of conspiracy to commit statutory burning, and he committed this crime as Battalion Chief for the West Warwick Fire Department. Additional process to determine such facts as this, obviously would needlessly increase the cost of running our towns.

Plaintiff also contests the adequacy of the hearing that he received at the Town Council level. This contention may be answered briefly by pointing out that he did not have a right to a hearing before the Town Council.

R.I.Gen.Laws, 1956, § 45–15–5 (1980) Reenactment) provides:

45–15–5. Presentment to council of claim or demand against town.—Every person who shall have any money due him from any town or city, or any claim or demand against any town or city, for any matter, cause or thing whatsoever, shall take the following method to obtain the same, to wit: Such person shall present to the town council of the town, or to the city council of the city, a particular account of his claim, debt, damages or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made him by the town or city treasurer of such town or city within forty (40) days after the presentment of such claim, debt, damages or demand aforesaid, such person may commence his action against such treasurer for the recovery of same.

This statute does not confer any additional rights upon a person who has a claim against a town. Rather, its function simply is to require a claimant to inform the town of his claim prior to commencing an action against the town. The Town Council need take no action on the claim filed.

Clearly plaintiff had no constitutional right to demand a hearing from the Town Council once the Pension Committee had denied him his pension benefits. As indicated above, plaintiff already had received a hearing before the Pension Committee. One hearing that satisfies the due process clause prior to the purported taking of

property is all that the Constitution requires.

Finally, with regard to both purported due process violations discussed above, plaintiff could have secured a full hearing in state court had he chosen that obvious route. The United States Supreme Court has ruled that where there are adequate state remedies to compensate a plaintiff for the loss of property he has suffered, the mandates of the due process clause are satisfied. *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1916–17, 68 L.Ed.2d 420 (1981).

In *Parratt*, for example, the state of Nebraska provided respondent prisoner with a tort claims procedure to redress purported property right violations that occurred in the state's penal institutions. *Id.* at 543, 101 S.Ct. at 1917. The procedure "was in existence at the time of the loss ... but respondent did not use it." *Id.* Since these remedies could have fully compensated the respondent for the property loss that he sustained, the Court held they were sufficient to satisfy the requirements of due process. *Id.* at 544, 101 S.Ct. at 1917.

As in *Parratt*, plaintiff here could have contested the Pension Committee's decision and the Town Council's failure to act in the Rhode Island state courts. Plaintiff, like respondent in *Parratt*, however, failed to do so. Moreover, there is no question that the Rhode Island state courts could have adequately compensated plaintiff for his alleged property loss if he was entitled to recover. In short, plaintiff has failed to take advantage of those fair and adequate avenues for relief that were available to him at the state level. He cannot complain, therefore, that he has been denied due process of law in this case.

Plaintiff also claims that § 6.03 of the West Warwick pension plan facially violates the Fourteenth Amendment's equal protection clause. He contends that § 6.03 arbitrarily prevents persons who commit and are convicted of crimes in connection with their positions from collecting benefits, while allowing those who commit and are convicted of the very same crimes (but not in connection with their positions) to collect benefits.

Plaintiff concedes that clauses such as § 6.03 receive "minimum scrutiny" when their constitutional validity under the equal protection clause is at issue. Under this standard of review, the Supreme Court has directed lower federal district courts to determine whether the classification "rationally furthers a legitimate state purpose." *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 618, 105 S.Ct. 2862, 2866, 86 L.Ed.2d 487 (1985).

■ Scrutinized under the rational basis test, § 6.03 clearly passes constitutional muster. The Town of West Warwick has at least two legitimate purposes in inserting § 6.03 into its plans. One is to deter town employees from committing acts of criminal conduct. A second is to prevent needless expenditure of public funds on individuals who "have seriously abused their public trust."

Section 6.03 rationally furthers both these legitimate ends. The threat of a penalty certainly will discourage town employees (at least in the course of their employment) from committing criminal conduct. Moreover, once enforced, § 6.03 saves towns from expending money on those public officials who have violated their public trust by divesting the officials of their accrued benefits.

That § 6.03 does not apply to all conduct of town employees does not render the clause an irrational means to a legitimate end. The Supreme Court has stated many times:

> Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.

*Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). There is clearly a "rational basis" for the classification established by that section and, thus, the constitutional mandate has been observed. *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

For all the above reasons, all requests for relief by the plaintiff in this action are

denied, and the Clerk will enter judgment for all defendants on all counts of the complaint.

*It is so Ordered.*