**BOAT OWNERS ASSOCIATION OF THE UNITED STATES ("BOAT/U.S."), et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 91–1914.

United States District Court, District of Columbia.

Oct. 7, 1993.

Charles Allen Hobbs, Washington, DC, for plaintiffs.

Sandra M. Schraibman, Renee M. Wohlenhaus, Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

In this action, plaintiffs seek declaratory and injunctive relief to prevent the United States levying a fee on certain recreational boat owners. Currently before the Court are defendants' Motion to Dismiss or for Summary Judgment, plaintiffs' Cross–Motion for Summary Judgment, the oppositions, and the replies thereto. For the reasons given below, we grant defendants' Motion for Sum-

mary Judgment and deny plaintiffs' Motion for Summary Judgment.

### I. Background

In an attempt to increase revenue, the Conference Agreement for the Omnibus Budget Reconciliation Act of 1990 adopted a fee on certain recreational boats ("recreational fee") creating a graduated fee schedule for larger boats.[1] H.Conf.Rep. No. 964, 101st Cong., 2d. Sess., 1024, reprinted in 1990 U.S.Code Cong. & Admin.News 2017, 2729. As originally enacted, the annual fee applied to all recreational boats longer than 16 feet through fiscal year 1995.[2] In 1992, Congress repealed the recreational fee for vessels under 37 feet beginning in fiscal year 1994.[3]

Section 2110(b) contains several provisions germane to this litigation. As is evident from its title, the recreational fee did not apply to commercial boats.[4] Each of the recreational fees listed in the statute was the maximum rate that could be assessed. Congress did not indicate whether lesser amounts could be levied or what calculation procedures should be followed. Furthermore, Congress ambiguously defined the scope of the recreational fee to include noncommercial vessels "operated on the navigable waters of the United States where the Coast Guard has a presence." 46 U.S.C. § 2110(b).

Congress delegated authority over the implementation of the recreational fee to the Secretary of Transportation ("the Secretary"). The Secretary passed rulemaking authority to the Coast Guard, an agency within the Department of Transportation. 56 Fed.Reg. 58771 (April 4, 1991). On March 28, 1991, the Coast Guard published in the Federal Register a Notice of Proposed Rulemaking (NPRM) entitled "Recreational User

---

1. Title X, Subtitle E, Section 10401(a) of the Omnibus Budget Reconciliation Act of 1990, enacted as Public Law 101–508 (November 5, 1990) (this provision concerning recreational boat owners amended 46 U.S.C. Section 2110(b)).

2. The rates varied from a low of $25 for boats between sixteen and twenty feet long, to a high of $100 for boats over 40 feet long. 46 U.S.C. § 2110(b).

3. Pub.L. No. 102–582 § 501 (October 1, 1992). Because fiscal year 1993 ended September 30,

1993, this case is now moot as to boats under 37 feet. As amended in 1992, the recreational fee for boats longer than 37 feet is $50, while the fee for boats longer than 40 feet is $100. The 1992 amendment also phases out the fee entirely after fiscal year 1994. Id.

4. A separate provision of the statute, § 2110(a) established certain fees for specific services rendered to commercial as well as recreational vessels.

Fees". 56 Fed.Reg. 30244 (July 1, 1991).[5] Although the Coast Guard held no public hearing on the subject, it did accept written comments (totalling in excess of 4,000 pages) from various interested parties during a 45 day comment period.

In its final ruling on the recreational fee, the Coast Guard levied the maximum fee allowed under § 2110(b) for each boat length classification. The Coast Guard defined the phrase "navigable waters of the United States where the Coast Guard has a presence" to include

> internal navigable waters of the United States, not subject to tidal influence, from which, during most of the boating season, a 16 foot long powered vessel with a displacement-type hull can navigate to waters subject to tidal influence.[6]

33 CFR 1.30–1(c)(3). The Coast Guard defends such an expansive interpretation by pointing to its discretionary authority and the minimal guidance provided by Congress.

Plaintiff, Boat Owners Association of the United States ("Boat/U.S.")[7], is the largest association of recreational boat owners in the United States.[8] Boat/U.S. raises numerous claims[9] as to why the Court should strike down the recreational fee affecting its members. Initially, plaintiffs point out that recreational boatowners, unlike many of their commercial counterparts, are already subject

to a gasoline tax on marine fuel that partially subsidizes the Coast Guard.

It is the basic contention of Boat/U.S. that § 2110(b) is a denial of the Constitutional right of Equal Protection. Plaintiffs employ two separate theories in support of this claim. First, they argue that it is a denial of equal protection for Congress to impose a user fee on recreational vessels but not on commercial ones because, it is alleged, commercial boats are far more likely to utilize Coast Guard services. Second, plaintiffs argue that the actions of the Coast Guard amount to a denial of equal protection when user fees are set at rates that exceed the estimated costs of the Coast Guard services.[10]

Additionally, plaintiffs contend that the Coast Guard, when it issued the applicable regulations, violated Congress's intent in two ways. The first alleged violation occurred when the Coast Guard set user fees at the maximum rates allowable under the statute. Plaintiffs claim action was taken without any attempt to determine if those rates would produce substantially more than the actual costs of the Coast Guard's services.[11] Finally, plaintiffs contend that the Coast Guard exceeded statutory authority by giving a broad definition to the term "Coast Guard presence".

---

5. The rule became effective on July 31, 1991.

6. Therefore, landlocked lakes and dammed rivers are not included. The Coast Guard maintains a presence on four landlocked waters: part of the Colorado River including Lake Havasu; Lake of the Woods; Lake Roosevelt; and Lake Tahoe. Plaintiff's Exhibit D–8, App. 97 (col. 2). Presumably, the definition in 33 CFR 1.30–1(c)(3) has been modified since the 1992 amendment to include only bodies from which a boat longer than 37 feet can navigate to tidal waters.

7. Also named as plaintiffs are two officers of the organization who also claim to be boat owners subject to the recreational fee.

8. The Coast Guard estimated that 80% of recreational boat owners were subject to the fees when first promulgated. Plaintiff's Exh. D–8, App. 87.

9. These are set forth in plaintiffs' scattershot complaint of 47 pages containing 186 paragraphs. The lack of merit of most of these

claims was subsequently conceded by plaintiffs only after defendants had expended substantial effort and time to respond to these now abandoned claims. *See* Plaintiffs' Response to Defendants' Motion for Summary Judgment, p. 4; *see also* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or in the Alternative, for Summary Judgment.

10. As a result, Boat/U.S. contends that recreational boatowners are subsidizing commercial vessels.

11. Plaintiffs cite two statutes to support this claim. The first, 31 U.S.C. § 9701, is a general user fee statute that requires each charge for a specific service to be fair and to be based on the value of the service and the cost of the service to the Government. The second statute, 14 U.S.C. § 664, is specific to the Coast Guard and requires it to comply with the requirements of § 9701.

## II. *Analysis*

### A. *Standard of Review*

Federal Rule of Civil Procedure 56(c) permits a court to grant summary judgment when the evidence in the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact [12] or that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden, the burden shifts to the nonmoving party to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted) (emphasis in original). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1356. In reviewing the evidence, a court must draw all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Then, only when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, is summary judgment appropriate.

### B. *Constitutional Claims*

#### 1. *Constitutionality "As Applied"*

■ It is well settled that legislation is presumed to be valid and will be sustained if the classification contained in the statute is rationally related to a legitimate government interest. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). When social or economic legislation is at issue, the Equal Protection Clause allows wide latitude and flexibility.[13] *Id.* (citing *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980)). The Supreme Court has determined that in the interests of proper statutory construction and to promote judicial economy, courts should initially decide whether a statute is constitutional "as applied" before reviewing the constitutionality of the statute "on its face." *Bd. of Trustees of State University of N.Y. v. Fox,* 492 U.S. 469, 484, 109 S.Ct. 3028, 3037, 106 L.Ed.2d 388 (1989). Therefore, we initially consider whether § 2110(b) is constitutional "as applied to" recreational boat owners.

For purposes of this analysis the Court presumes that the classifications used bear a rational relationship to a legitimate public or national interest. *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254. To rule the statute unconstitutional as applied, the Court must find that the Coast Guard in its regulations implemented the recreational fee in an irrational or unreasonable fashion that thwarted Congress's legitimate goal of charging boatowners for services.[14]

■ Plaintiffs argue that such irrationality is established if the fees assessed against recreational boatowners exceed the cost of services provided to them. The Court disagrees. Even assuming *arguendo* the accuracy of plaintiffs' claims that the fee is excessive, this does not prove an equal protection violation. There is no evidence that the Coast Guard irrationally manufactured or assembled the cost figures upon which it relied.

The method pursued by the Coast Guard was plain and straightforward. Pursuant to the discretion delegated by the Secretary,

---

**12.** To determine whether there is a genuine issue as to a material fact, it is proper for the Court to rely on the pleadings, depositions, affidavits and answers. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**13.** The Equal Protection Clause is made applicable to the federal government through the Due Process Clause of the Fifth Amendment. *See* *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

**14.** That this was the goal of § 2110 is readily apparent from the title of the implementing statute, "Establishment and Collection of Fees for Coast Guard Services." Public Law 101–508, § 10401 (November 5, 1990).

the Coast Guard used Congressional Budget Office figures to quantify the anticipated revenue to be generated. It also calculated the costs of its services and determined that the maximum fees allowed by Congress under the statute were appropriate. The maximum fee was chosen, in part, because the Coast Guard's calculations included a percentage of the cost of services provided to both commercial and recreational vessels.[15] Therefore, the Court holds that there is a rational basis for the Coast Guard's calculations of contemplated revenues and estimated costs and that the recreational fee is constitutional as applied to boatowners.

2. *Constitutionality of Section 2110(b) as Written*

■ We have previously noted that "a court's review of a pure economic regulation has been called the 'toothless rationality' test." *Brown v. Barry*, 710 F.Supp. 352, 354 (D.D.C.1989). In determining the reasoning behind a statute challenged on equal protection grounds, the Court is not a finder of fact left to navigate through the often conflicting thicket of congressional intent. Rather, the Court may end its investigation once it concludes that a legitimate rationale exists. *See e.g. United States v. Sperry Corp.*, 493 U.S. 52, 60, 110 S.Ct. 387, 393, 107 L.Ed.2d 290 (1989).[16]

Plaintiffs contend that § 2110(b) unconstitutionally denies equal protection because it exempts commercial vessels from the user fee, thereby creating arbitrary subclasses having no rational basis.[17] The Court, however, finds that the stated purpose of requiring recreational boatowners to share the costs of services provided by the Coast Guard to be a rational policy goal. Congress may well have believed there would be less adverse impact on the economy by taxing large recreational vessels than by taxing commercial vessels that might be unable to absorb increased business costs. It is not arbitrary to treat commercial and recreational boats differently given their varying roles in the economy.[18]

■ The Court further determines that the fee structure set forth in the statute was a constitutional exercise of Congress's authority. It is well settled that the amount of a user fee need not be precisely calibrated to

15. The Court doubts the Coast Guard, which maintains permanent bases, helicopters, and cutters, could precisely determine through the application of accounting principles what proportion of these high overhead expenses are attributable solely to recreational boat owners. In any case, the Court believes the figures used were not irrational considering the wide latitude granted the government under *Cleburne*.

16. In *Sperry*, the Court did not look to the record, but instead discerned several rationales why Congress "could have" concluded a user fee was appropriate. *Id. See also Cleburne*, 473 U.S. at 458–59, 105 S.Ct. at 3264 ("under [the traditional equal protection analysis] we do not sift through the record to determine whether policy decisions are squarely supported by a firm factual foundation ... the burden is not on the legislature to convince the Court that the lines ... drawn are sensible").

17. We acknowledge that despite the Supreme Court's deference to the legislature, it has occasionally used what is in effect a modified application of the rational basis test to void statutory classifications. *Compare Williams v. Vermont*, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (rational basis test used to strike down a vehicle use tax that effectively imposed a tax solely on residents who bought their automobiles

before moving to Vermont) and *Hooper v. Bernalillo County Assessor*, 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) (struck down under rational basis test a tax favoring established residents) *with Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461–62, 101 S.Ct. 715, 722–23, 66 L.Ed.2d 659 (1981) (state justified in treating plastic and paperboard milk containers differently) and *Nixon v. Administrator of General Services*, 433 U.S. 425, 471 n. 33, 97 S.Ct. 2777, 2804 n. 33, 53 L.Ed.2d 867 (1977) (permissible for legislation to be drafted so as to impact an individual, corporation, or identifiable group).

We distinguish *Williams* and *Hooper* by noting that they concerned the right of free interstate migration, which at the time the cases were decided was a right in the process of evolving. *See Long Island Lighting Co. v. Cuomo*, 666 F.Supp. 370, 417 (N.D.N.Y.1987).

18. Contrast this with the situation in cases where the Supreme Court has struck down statutes as irrational. *See e.g. Williams*, 472 U.S. at 27, 105 S.Ct. at 2473 (treating private automobile owners differently merely because they lived in different locations when purchasing their vehicles) and *Cleburne*, 473 U.S. at 436, 105 S.Ct. at 3252 (community ordinance prohibited the operation of a home for retarded persons because of "negative attitude of the majority of property owners").

the use of government services. *Sperry Corp.*, 493 U.S. at 60, 110 S.Ct. at 393 (all that is required is that the user fee be a "fair approximation of the cost of benefits supplied") (*citing Massachusetts v. United States*, 435 U.S. 444, 463 n. 19, 98 S.Ct. 1153, 1165 n. 19, 55 L.Ed.2d 403 (1978)).

The Court is not required to choose among the various statistics proffered because the Coast Guard acted reasonably in determining that the maximum fee authorized by the statute best served the stated Congressional intent. Plaintiffs' sole support for their contention that the fees collected vastly exceed the costs of services is the declaration of Charles Hardin to the effect that only a "very, very small percent" of the Coast Guard's total outlays are spent on recreational boaters. Exh. A, Par. 32, App. 12. This one unsubstantiated statement does not meet the admittedly low threshold needed to defeat summary judgment. That threshold, as stated in *Matsushita*, requires that the non-moving party do more than merely "show that there is some metaphysical doubt as to the material facts." 475 U.S. at 587, 106 S.Ct. at 1356.

B. *Congressional Intent as Reflected in the Statute*

1. *Congressional Intent and Agency Rulemaking*

■ Plaintiffs contend that the Coast Guard violated congress's intent by not conducting a cost/benefit analysis to determine whether the costs of services to recreational boatowners justified setting fees at the maximum rate allowed. Plaintiffs concede that § 2110(b) does not explicitly require such an analysis, but argue that Congress's intentions can be inferred from two statutes requiring

that user fees be reasonably correlated to actual costs of services. *See* 31 U.S.C. § 9701 (a general statute requiring that agency fees approximate costs); *see also* 14 U.S.C. § 664 (specifically applying the provisions of § 9701 to the Coast Guard).

In determining whether Congress intended sections 9701 and 664 to apply, the Court derives much insight from the purpose of the Act, its factual background and the statutory context. *See Amalgamated Meat Cutters v. Connally*, 337 F.Supp. 737, 748 (D.D.C.1971) (3 judge panel). Defendants note that Congress specifically applied § 9701 to the direct user fees contained in § 2110(a)(1), but did not specifically apply § 9701 to § 2110(b).[19]

Section 2110(a) lists certain direct fees the Secretary may levy.[20] The language of § 2110(a) clearly demonstrates that Congress intended to have the Coast Guard establish fees for its various services.[21] No statutory fee schedule exists for these service related charges, making § 9701 the only statutory guideline to prevent excessive pricing. Section 664 makes applicable the provisions of § 9701 to the Coast Guard. It also applies to direct fees for a service or thing of value and provides an additional check on excessive fees. This section goes on to require the Secretary to verify the type and cost of each activity to Congress annually. It is important for Congress to verify the validity of such fees given the complete discretion accorded the Secretary in setting them.

By contrast, § 2110(b) contains language indicating that the recreational fee is an indirect fee.[22] Section 2110(b) does not mention any fees for specific services, or in any way imply that a correlation or nexus with services is required. In fact, § 2110(b)(5) states

---

19. Section 2110(a)(1) reads "except as otherwise provided in this title, the Secretary shall establish a fee or charge of a service or thing of value provided by the Secretary under this subtitle, in accordance with section 9701 of title 31."

20. A direct fee, in this context, is a fee for a specific service or thing of value. *See* 31 U.S.C. § 9701.

21. Congress specifically forbid fees for certain enumerated services, such as search and rescue operations. § 2110(a)(5).

22. By indirect fee, the Court means fees collected to pay for general services so as to "require recreational boaters to share in the cost of existing Coast Guard programs including search and rescue, boating safety, and aids to navigation for which no direct user fee may be assessed." Cong.Rec. H 12708, October 26, 1990; *see* Plaintiffs' Exhibit D–7.

that the Secretary must inform those paying the levy that they could "expect no increase in the quantity, quality, or variety of services the person receives from the Coast Guard as a result of that payment." 46 U.S.C. § 2110(b)(5).

Congress does not appear to have been as concerned about the Coast Guard's fees under § 2110(b), perhaps because the Secretary's discretion under the statute is limited by the graduated fee structure.[23] Defendant also correctly notes that Congress explicitly made § 9701 applicable to § 2110(a) and not to § 2110(b). Although the draft legislation sent to Congress by the Secretary made the recreational fee in § 2110(b) subject to § 9701, Congress removed the recreational fee from the scope of § 9701. Furthermore, the requirement in § 664 that the Coast Guard calculate and justify the value of each service provided is more applicable to direct fees rather than to indirect fees. Because indirect fees essentially compensate for the costs of a large percentage of Coast Guard operations, a justification of each service would involve an annual and redundant recalculation and re-explanation of general Coast Guard expenditures.

Neither the language of the statute nor the legislative history indicate that Congress intended or expected the Coast Guard to set the fees below the statutory ceilings. Plaintiffs' confidence that Congress "would have intended the Coast Guard to set the fees at less than the maximums", lacks any factual underpinning. *See* Plaintiffs' Response at 29.

■ In questions concerning rulemaking, the Court should give great deference to the interpretation adopted by the agency charged with administering the statute. *See e.g. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *see also Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Based on the statutory framework, the Coast Guard determined that it was appropriate to levy the maximum fee. The record indicates, and plaintiffs do not contest,

that the Coast Guard expended considerable effort to enlist public comment. *See Florida Power & Light Co. v. U.S.,* 846 F.2d 765, 771 (D.C.Cir.1988) *cert. denied* 490 U.S. 1045, 109 S.Ct. 1952, 104 L.Ed.2d 422 (1989) (user fee upheld once adequate time was provided for comments and sufficient factual detail made public to permit interested parties to comment meaningfully). The Coast Guard was not obliged to hold public hearings on the matter as suggested by plaintiffs. *See United States v. Florida East Coast R. Co.,* 410 U.S. 224, 240, 93 S.Ct. 810, 818, 35 L.Ed.2d 223 (1973) (agency may proceed with all or part of the evidence in written form).

### 2. *Interpretation of "Coast Guard Presence"*

The Coast Guard construed the statutory limitation on the recreational fee to include territorial seas, inland waters subject to tidal influences, and waters where a 16 foot boat, now presumably a 37 foot boat, can navigate successfully to waterways subject to tidal influence. Plaintiffs argue that this definition vastly exceeds the statutory limitations.

■ Initially, the Court recites the comment of the Supreme Court that

> [t]o sustain the [agency's] application of [a] statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached.

*Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. at 843, 104 S.Ct. at 2781 (when statute is ambiguous, administering agency is entitled to make reasonable policy choice). In this instance, Congress did not provide specific guidance in this area. Determining the scope of the recreational fee involves technical questions within the experience and expertise of the Coast Guard. The Court, therefore agrees with the Court of Appeals that

> [i]t would be truly bizarre ... for a court to determine de novo [an issue] involv[ing]

---

**23.** The Court also notes in passing that Congress did not alter the Secretary's discretion to set fees

within the parameter of the scale when the statute was amended in 1992.

both technical and policy questions within the expertise of the agency.

*Wagner Seed Co., Inc. v. Bush,* 946 F.2d 918, 921 (D.C.Cir.1991). Therefore, the Court is satisfied that the Coast Guard's interpretation of the statute is reasonable and controlling in this matter.

### III. *Conclusion*

For the reasons given above, We hold that § 2110(b) as written and applied is constitutional and We hold that plaintiffs have not been denied equal protection. We, therefore, deny plaintiffs' motion for summary judgment and grant defendants' motion for summary judgment.